**Brittany Marlowe HOLBERG, a/k/a Brittany Marlowe Johnson, Appellant,**

v.

**The STATE of Texas.**

**No. 73,127.**

Court of Criminal Appeals of Texas.

Nov. 29, 2000.

Rehearing Denied Feb. 7, 2001.

David L. Botsford, Austin, for appellant.

James A. Farren, DA, Wesley G. Clayton, Asst. DA, Canyon, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

MANSFIELD, J., delivered the opinion of the Court, in which McCORMICK, P.J., and HOLLAND and KEASLER, JJ., joined.

Appellant, Brittany Marlowe Holberg, was found guilty of capital murder and sentenced to death. On appeal to this

Court, she brings fifty points of error,[1] which we have re-ordered and grouped to facilitate a more orderly discussion. We will affirm the judgment of the trial court.[2]

## Points of Error Relating to the Constitutionality of Penal Code § 19.03 and Article 37.071

 In point of error number ten, appellant, citing *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), and *Edwards v. Aguillard*, 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987), argues that Penal Code § 19.03 and Article 37.071, the bases of her conviction and punishment, violate the Establishment Clause of the First Amendment.[6,7] More specifically, appellant argues that the statutes violate the Establishment Clause because (1) "the sponsors of the House Bill creating those statutes could not articulate a reasonable, secular purpose for their enactment but did articulate, at length, the religious purpose for the punishment, while siding, in fact, with the viewpoint of a particular and identifiable religious sect," and (2) "the effect of [the statutes is] to advance the beliefs of fundamentalist Protestants over those of other branches of American Christianity and other sects and religions that oppose the death penalty on contrasting religious grounds."

House Bill 200, enacted into law in 1973, brought Penal Code § 19 .03 and Article 37.071 into being. See H.B. 200, 63rd Leg., R.S., ch. 426, 1973 Tex. Gen. Laws 1122–1129. According to appellant, the legislative history of H.B. 200 reveals the following relevant facts: At a public hearing on the bill before the House Committee on Criminal Jurisprudence on February 6, 1973, three district attorneys testified that they believed the death penalty was, generally, a deterrent to murder. One of the district attorneys also observed that the death penalty ensured that the person executed would never murder again, whether in or out of prison. During the House floor debate on the bill on May 8, 1973, the bill's chief sponsor, Representative Cobb, stated that the bill should be enacted into law because the people of Texas wanted the death penalty. Finally, at the close of the House floor debate on May 10, 1973, Representative Washington, who opposed the bill, argued that no evidence existed that the death penalty deterred crime. Representative Leland, also opposed to the bill, commented next that state executions violated the Ten Commandments' prohibition on killing. In response to Leland's argument, the co-sponsors of the bill—Representatives Cobb, Williamson, and Hollowell—cited biblical passages that, in their view, supported the death penalty.

 A statute violates the Establishment Clause if the Legislature's actual purpose in enacting the statute was to advance or inhibit religion, or if the stat-

1. Appellant's brief contains an un-numbered point of error between points 46 and 47. We have designated that point as point of error number 46–A.

2. Pursuant to Texas Rule of Appellate Procedure 77.2, a majority of this Court has determined that the only parts of this opinion to be published are the introductory paragraph, the paragraphs discussing points of error numbers ten and eleven, and the concluding paragraph.

6. The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion ." This guarantee of government neu-trality with respect to religion was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303–304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

7. Although appellant made no such objection in the trial court, we have held that "[q]uestions involving the constitutionality of a statute upon which a defendant's conviction is based should be addressed by appellate courts, even when such issues are raised for the first time on appeal." *Rabb v. State*, 730 S.W.2d 751, 752 (Tex.Crim.App.1987). See G. Dix & R. Dawson, *Texas Criminal Practice and Procedure* § 42.122 (1995 & Supp.2000).

ute's primary effect is to advance or inhibit religion.[8] *Lemon v. Kurtzman*, 403 U.S. at 612–613, 91 S.Ct. at 2111. However, a court may not hold a statute invalid on Establishment Clause grounds unless the statute's invalidity definitely appears. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim.App.1978); *Ex parte Halsted*, 147 Tex.Crim. 453, 182 S.W.2d 479, 482 (1944). Furthermore, in assessing the legislative purpose, a court cannot assume that the selected statements of a few legislators, even the sponsors of the legislation, reflected the motivation of the entire Legislature. See *State v. Carpenter*, 197 Wis.2d 252, 541 N.W.2d 105, 112 n. 11 (1995), *cert. denied*, 521 U.S. 1118, 117 S.Ct. 2507, 138 L.Ed.2d 1011 (1997).[9]

The legislative history cited by appellant does not persuade us that the Legislature's actual purpose in enacting Penal Code § 19.03 and Article 37.071 was to advance or inhibit religion. In our view, it is at least as likely that the Legislature's actual purpose in enacting the statutes was the secular one of establishing the appropriate penalty for certain heinous crimes, and that the legislators acted as they did because they held one or more of the following reasonable, secular beliefs: (1) the death penalty is the only proportional punishment for certain crimes; (2) the death penalty ensures, at a minimum, that the offender will never harm anyone again; (3) the death penalty may deter some persons (professional criminals and those already imprisoned for life), and possibly others, from committing murder; and (4) life imprisonment without parole is not a viable alternative to the death penalty because (a) capital offenders are a danger to others in the prison environment, (b) per-

sons imprisoned literally for life have little incentive to behave properly, and (c) it is undesirable, costly, and possibly inhumane to keep persons in prison until they actually die from old age or disease. See generally *Gregg v. Georgia*, 428 U.S. 153, 183–186, 96 S.Ct. 2909, 2930–2931, 49 L.Ed.2d 859 (1976) (plurality).

Appellant's reliance upon *Edwards v. Aguillard*, 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510, is misplaced. In that case, the Supreme Court held invalid, on Establishment Clause grounds, the Louisiana "Creationism Act," which forbade the teaching of the theory of evolution in public schools unless accompanied by instruction in "creation science." The Supreme Court held the statute invalid because the Court could not conceive of a purpose that the Louisiana Legislature might have had for the statute other than the religious one of advancing the Christian belief in divine creation. Thus, *Edwards v. Aguillard* is easily distinguishable from the case at bar.

■ We are also unpersuaded that the primary effect of the statutes is to advance Protestant beliefs over those of other faiths. The primary effect of the statutes is penal in nature, not religious, and the mere fact that the statutes are consistent with the tenets of a particular faith does not render the statutes in violation of the Establishment Clause. *Hernandez v. C.I.R.*, 490 U.S. 680, 696, 109 S.Ct. 2136, 2147, 104 L.Ed.2d 766 (1989). We overrule point of error number ten.

■ In point of error number eleven, appellant argues that Penal Code § 19.03 and Article 37.071 violate the Cruel and Unusual Punishments Clause of the Eighth Amendment[10] because the statutes

---

**8.** The Court in *Lemon v. Kurtzman* also held that a statute violates the Establishment Clause if the statute fosters an excessive entanglement of government with religion, but appellant does not argue that prong of *Lemon*.

**9.** While the decision in *State v. Carpenter*, 197 Wis.2d 252, 541 N.W.2d 105, is not binding on this Court, we find its reasoning persuasive.

**10.** The Eighth Amendment's ban on the infliction of "cruel and unusual punishments" was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Louisiana v. Resweber*, 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947).

"advance" the "particular [Protestant] religious belief in 'blood atonement.'" Again, we are unpersuaded. The Eighth Amendment's prohibition on cruel and unusual punishments has three aspects: (1) it limits the methods which may be used to inflict punishment; (2) it limits the amount of punishment which may be prescribed for various offenses; and (3) it bars any punishment in certain situations. See 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 2.14(f) at 249 (1986 & Supp. 2001). As we discussed previously, the Legislature, when it enacted the statutes in question, may have been motivated by reasonable, secular beliefs. The fact that the statutes may be consistent with the tenets of the Protestant faith does not, in our view, implicate any of the three aspects of the Eighth Amendment prohibition on cruel and unusual punishment. We overrule point of error number eleven.

Appellant has shown no reversible error. Therefore, we affirm the judgment of the trial court.

MEYERS, J., did not participate in the decision of the case. KELLER, J., joined the opinion of the Court, except with respect to its discussion of point of error number 40, and joined the judgment of the Court. PRICE, J., joined only the judgment of the Court. WOMACK, J., joined the opinion of the Court, except with respect to its discussion of point of error number sixteen, and joined the judgment of the Court. JOHNSON, J., joined the opinion of the Court, except with respect to its disposition of point of error number 40, to which she dissented.